[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
These actions are related petitions for habeas corpus relief from incarceration resulting from a conviction of manslaughter first degree, in violation of Connecticut General Statutes Section 53a-55(a)(1). In the case designated docket no. 1107, the petitioner is represented by a special public defender, Attorney Thomas Farver, and, in CT Page 6955-E the case designated docket no. 1496, the petitioner represents himself with his special public defender as standby counsel. These matters were bifurcated for administrative convenience even though both files raise claims attacking the validity of the same conviction and confinement. The reason for this split was that the petitioner's public defender advised the court that the petitioner wished to pursue certain claims that the special public defender felt that his ethical responsibilities as an officer of the court would not permit him to advance on behalf of the petitioner. To resolve this dilemma, the court has allowed the petitioner to represent himself in the presentation of those claims.
In case docket no. 1107, the petitioner asserts that his confinement is illegal in that his trial counsel rendered ineffective assistance by failing to subpoena a witness, Beverly Sells, and by failing to subpoena rental records of the Bridgeport Housing Authority pertaining to the lease for the apartment where the homicide occurred in that the trial court improperly denied the petitioner's motions to dismiss CT Page 6955-F for lack of speedy trial under Connecticut General Statutes Section 54-82c and in that the Sentence Review Division improperly refused to consider certain evidence presented to the Division at the petitioner's review hearing.
In case docket no. 1496, the petitioner, pro se, asserts that his confinement is illegal in that his trial attorney and the trial prosecutor colluded to deprive him of the effective assistance of counsel in that the trial court improperly denied the petitioner his right to represent himself at a probable cause hearing and in that the trial court improperly excluded exculpatory evidence at his trial.
On October 21, 1989, at apartment 106, Pequonnock Apartments, in Bridgeport, the petitioner stabbed and killed Edward Cooper. Shortly thereafter, the petitioner was arrested and held to face a murder charge for this homicide. On December 7, 1989, a probable cause hearing was held in accordance with Connecticut General Statutes Section54-46(a). At the commencement of this hearing the petitioner requested that he be allowed to represent himself at the CT Page 6955-G hearing but that a public defender be appointed to represent him following the hearing (Petitioner's Exhibit A, p. 3). The presiding judge denied this request, and the petitioner was represented by a public defender at the probable cause hearing (Petitioner's Exhibit A, pp. 16 to 18). A finding of no probable cause was the result of this hearing (Petitioner's Exhibit A, p. 88).
In light of this finding, the prosecuting authority filed a substitute information alleging manslaughter first degree for the homicide. On May 9, 1990, an evidentiary hearing on the petitioner's motion to dismiss for a lack of speedy trial, pursuant to Connecticut General Statutes Section 54-82c was held, which motion was denied by Judge Ronan (Petitioner's Exhibit B, p. 19). The same motion was reargued before Judge W. Sullivan on July 16, 1990, after jury selection had begun, and the court refused to overrule Judge Ronan's previous decision denying the motion (Petitioner's Exhibit C, pp. 74 and 98).
After the probable cause hearing, a special public CT Page 6955-H defender, Attorney Frank J. Riccio, was appointed to represent the petitioner. The petitioner elected a trial by jury, and the taking of evidence at the jury trial began on July 30, 1990. On August 3, 1990, the jury found the petitioner guilty as charged, and on September 14, 1990, the petitioner received a sentence of twenty years confinement (Petitioner's Exhibit D., p. 27).
The petitioner appealed this conviction, and the conviction was affirmed, State v. Allen, 28 Conn. App. 81 (1992).
 I.
The court addresses the claims raised in case docket no. 1107 first.
 A.
Turning to the petitioner's claim regarding the denial of his motions to dismiss for lack of speedy trial under Connecticut General Statutes Section 854-82c, "[i]t is well CT Page 6955-I established that habeas corpus cannot be used as an alternative to a direct appeal," Galland v. Bronson,204 Conn. 330 (1987), p. 333. Consequently, a petitioner must both allege and prove that he did not deliberately bypass the orderly procedure of a direct appeal, Morin v. Manson,192 Conn. 576 (1984), p. 579. The burden of proving facts establishing no deliberate bypass of the direct appeal process, by a preponderance of the evidence, is on the petitioner, Ibid., pp. 579 and 580.
The court finds that the petitioner has failed to meet his burden of proving by a preponderance of the evidence that he did not deliberately bypass direct appeal of the trial court's denials of his motions to dismiss. This issue was extensively litigated before two judges at the trial level. As noted above, the petitioner appealed his conviction and, yet, did not assert as error these rulings in his appeal,State v. Allen, supra, p. 82. No credible evidence was adduced at the habeas corpus hearing to indicate that the decision not to raise this issue on appeal was other than a deliberate one. The petitioner was represented by counsel on CT Page 6955-J appeal, Ibid, p. 81.
As to the ineffective assistance claim in this case, the petitioner claims that Attorney Riccio's representation was deficient by failing to subpoena Beverly Sells and rental records. It should be observed that the petitioner never denied stabbing the victim, and the defense advanced at trial was one of self-defense.
Beverly Sells is a street person who was literally dragged to the Bridgeport Police Department by an unknown male companion in order to give a statement regarding her knowledge of the homicide. Under protest she told a detective investigating the killing that she was in the victim's apartment during the stabbing and implicated the petitioner (Petitioner's Exhibit BB).
Sometime before trial, the petitioner learned of this episode from an acquaintance. Attorney Riccio obtained a copy of Petitioner's Exhibit BB, the detective's report regarding Beverly Sells statement. The petitioner and Riccio CT Page 6955-K discussed the potential usefulness of calling Sells to testify in an effort to establish that the male companion who forced her to give a statement to the police was a relative of the victim. Proof of such coercion on the part of the victim's family might be the basis for an inference that other family members, who were key witnesses for the prosecution, were fabricating evidence in order to avenge Cooper's death at the petitioner's hands.
Attorney Riccio testified that he informed the petitioner that he was reluctant to subpoena Sells until he could discuss the matter with her and learn what her testimony might be. Riccio attempted to contact her by phone and by personally visiting the only addresses for her of which he knew. These attempts proved futile, and her whereabouts remained unknown. The court finds Attorney Riccio's testimony in this regard to be credible.
The petitioner also claims that the Bridgeport Housing Authority records would have proved that the victim was not named on the lease as an occupant of the apartment in which CT Page 6955-L he was killed. According to the lease, Michael Cooper, the victim's brother, was the tenant renting this apartment (Petitioner's Exhibit KK). The petitioner contends that the introduction of this lease would have undermined the credibility of the prosecution witnesses who testified that the victim lived in the apartment.
Attorney Riccio testified that he did not subpoena these records because the existence of the victim's name on the lease was immaterial. The other occupants of the apartment, including Michael Cooper, all stated that the victim was staying at the apartment, and whether the victim's name was on the lease did not alter that fact nor diminish their credibility.
The burden is on the petitioner to demonstrate that his attorney's representation fell below an objective standard of reasonableness as measured by prevailing professional norms,Quintana v. Warden, 220 Conn. 1 (1991), p. 5. Judicial scrutiny of trial counsel's performance must be highly deferential, and there is a strong presumption that counsel's CT Page 6955-M conduct fails within the wide range of reasonable professional assistance, Ibid.
The court finds that the petitioner has failed to prove by a preponderance of the evidence that Attorney Riccio's performance fell below an objective standard of reasonableness. Attorney Riccio, an experienced criminal trial lawyer, was understandably reticent to produce a witness who had previously implicated his client without discussing the incident with her before hand. He made reasonable efforts to locate and communicate with her to no avail. Her availability to testify at the petitioner's trial in July of 1990 was not proven to the court's satisfaction.
Also, it is unclear that, even if Sells could have been found, and, even if she identified her companion as a relative of the victim, that this testimony would have been admissible to impeach other relatives of the victim. The court finds the utility of this testimony to be highly speculative.
As to the lease agreement records, the court has CT Page 6955-N reviewed the trial transcript and cannot see how the absence of the victim's name on the lease bore on the credibility of the prosecution witnesses or assisted the defense case. That the victim was staying at the apartment at the time of his death, despite not being on the lease, appears to be quite believable. It was his presence at the apartment and not the nature of his tenancy which was significant. The court finds that trial counsel's representation was not deficient in this regard.
 C.
The final claim in case docket no. 1107 pertains to the refusal of the Sentence Review Division to consider the trial transcript in scrutinizing the petitioner's sentence. Because the petitioner cannot directly appeal a decision of the Division, State v. Nardini, 187 Conn. 109 (1982), p. 117, the petitioner is relieved of any burden of demonstrating no deliberate bypass.
In its Memorandum of Decision, filed January 10, 1992, CT Page 6955-O the Sentence Review Division stated that it had considered the pre-sentence investigation report, the sentencing transcript, the information, and other documents before the sentencing court (Petitioner's Exhibit EE, p. 2). The petitioner argues that, because the sentencing judge was present during the trial and was entitled to consider matters adduced during trial, the Review Division was obligated to read the entire trial transcript so that it might assume the same posture as the sentencing judge. The court rejects this argument.
Connecticut General Statutes Section 51-196 indicates that, in arriving at its decision, the Review Division "may
require the production of presentence or precommitment reports and any other records, documents or exhibits connected with such review proceedings" (emphasis added). The use of the word "may" implies that the Review Division has the discretion not to consider such items. If the petitioner's argument was correct, no such discretion would be permitted, and the word "shall" would appear in the place of "may." The statutory language indicates that the Review Division need not assess a sentence from a position identical
CT Page 6955-P to that of the sentencing judge.
The material that the Review Division did consider would appear to apprise the members of the Division sufficiently of the salient factors necessary to render a fair decision. Fairness, and not perfection, is all that the review process under Connecticut General Statutes Section 51-196 requires.
 II
The court now addresses the issues raised, pro se, in case docket no. 1496.
 A.
In his first count, the petitioner alleges that his trial attorney and the trial prosecutor engaged in collusion, which collusion was manifest in a variety of ways to deprive the petitioner of the effective assistance of counsel.
"Collusion" is an "agreement between two or more persons CT Page 6955-Q to defraud another of his rights," Ballentine's LawDictionary. The court is cognizant that the petitioner has drafted this claim himself, and the court keeps in mind that inartful crafting of the claim ought not preclude consideration of it. However, after a careful consideration of all of the evidence and testimony in this case, the court finds that the evidence admitted is devoid of material which supports a conclusion that the petitioner's trial counsel and the trial prosecutor conspired or agreed expressly or tacitly to deprive the petitioner of his rights. Absent such evidence the petitioner has failed to prove his allegation of collusion.
 B.
The petitioner next claims that the trial court's refusal to allow him to represent himself at his probable cause hearing warrants relief.
The court rejects this claim on two grounds. First, the petitioner never raised this claim in his direct appeal. For CT Page 6955-R the reasons outlined in section I.A., supra, the petitioner has failed to meet his burden of proving that he did not deliberately bypass the direct appeal process with respect to this issue.
Second, the result of the probable cause hearing was that no probable cause was found, i.e., the petitioner received a decision in his favor. If the trial court had found probable cause, the petitioner might have a colorable claim. However, the finding of no probable cause precluded the state from prosecuting the petitioner on the charge of murder. This is all the petitioner could have hoped for in representing himself. The outcome of the probable cause hearing had no bearing whatever on the state's power to file a charge of manslaughter first degree against the petitioner. Because the outcome of the proceeding at which the petitioner desired to represent himself favored the petitioner, there is no adverse decision from which the habeas corpus court can provide relief.
C. CT Page 6955-S
The petitioner's final pro se claim is that exculpatory evidence, viz. the presence of wood splinters in the victim's hands, was wrongfully excluded from the jury's consideration. This claim also fails because the court finds that no such evidence or testimony ever existed. Although the petitioner and his mother testified that the medical examiner testified regarding the presence of such splinters, the trial transcript of his testimony discloses no such testimony nor any ruling excluding such testimony. Attorney Riccio, the petitioner's own trial attorney, testified that he was aware of no such evidence nor was any testimony in that regard produced at trial, confirming the accuracy of the trial transcript. The medical examiner's autopsy report, dated October 23, 1989, was produced at the habeas hearing, and it discloses no evidence that wood splinters were discovered (Respondent's Exhibit 1). The petitioner's mother indicated that she took meticulous notes at her son's trial. She was invited by respondent's counsel to produce her notes regarding the splinters but did not do so. The court finds that the petitioner has failed to prove that such evidence or CT Page 6955-T testimony existed much less prove that it was improperly excluded.
For the above reasons, both petitions are dismissed.
BY THE COURT,
Samuel J. Sferrazza Judge, Superior Court